1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

JOCELYN A. MOULTON,

Case No. 3:12-cv-06076-RJB-KLS

7
                                    Plaintiff,

8
            v.

REPORT AND RECOMMENDATION

9

CAROLYN W. COLVIN. Commissioner of
Social Security,

Noted for February 21, 2014

10
11
                                    Defendant.

12
13

Plaintiff has brought this matter for judicial review of defendant's denial of her

14

applications for disability insurance and supplemental security income ("SSI") benefits.  This

15

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

16

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

17

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

18

undersigned submits the following Report and Recommendation for the Court's review,

19

recommending that for the reasons set forth below, defendant's decision to deny benefits be

20

reversed and this matter be remanded for further administrative proceedings.

21
22

FACTUAL AND PROCEDURAL HISTORY

23

On June 30, 2010, plaintiff filed an application for disability insurance benefits and

24

another one for SSI benefits, alleging in both applications that she became disabled beginning

25

September 15, 2007, due to depression, anxiety, uncontrolled diabetes, kidney disease, and a

26

right ankle problem. See ECF #11, Administrative Record ("AR") 12, 207.  Both applications

REPORT AND RECOMMENDATION - 1

were denied upon initial administrative review on October 7, 2010, and on reconsideration on January 13, 2011.  See AR 12.  A hearing was held before an administrative law judge ("ALJ") on September 13, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  See AR 28-66.

In a decision dated November 18, 2011, the ALJ determined plaintiff to be not disabled. See AR 12-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 24, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").  See AR 1; 20 C.F.R. § 404.981, § 416.1481.  On January 2, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.  See ECF #3.  The administrative record was filed with the Court on April 16, 2013.  See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record, including the opinions of Alyssa A. Ruddell, Ph.D., Kristi Breen, Ph.D., Rachelle C. Langhofer, M.D., and Kimberly A. Mebust, M.D.; (2) in assessing plaintiff's credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding plaintiff to be capable of performing her past relevant work.  For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the opinions of Drs. Ruddell, Breen, Langhofer, and Mebust, as well as the lay witness evidence in the record, and therefore in assessing plaintiff's residual functional capacity and in finding her to be capable of returning to her past relevant work and thus not disabled.  Also for the reasons set forth below, however, while defendant's decision to

REPORT AND RECOMMENDATION - 2

1   deny benefits should be reversed on this basis, the undersigned recommends that this matter be

2   remanded for further administrative proceedings.

3                                            DISCUSSION

4           The determination of the Commissioner of Social Security (the "Commissioner") that a

5   claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

6   applied by the Commissioner, and the "substantial evidence in the record as a whole supports"

7   that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

8   Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

9   772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

10  nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

11  and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d

12  432, 433 (9th Cir. 1987)).

13          Substantial evidence is "such relevant evidence as a reasonable mind might accept as

14  adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

15  omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

16  supported by inferences reasonably drawn from the record.").  "The substantial evidence test

17  requires that the reviewing court determine" whether the Commissioner's decision is "supported

18  by more than a scintilla of evidence, although less than a preponderance of the evidence is

19  required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

20  admits of more than one rational interpretation," the Commissioner's decision must be upheld.

21  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

22  sufficient to support either outcome, we must affirm the decision actually made.") (quoting

REPORT AND RECOMMENDATION - 3

1  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

2  I.      The ALJ's Evaluation of the Opinions of Dr. Ruddell, Breen, Langhofer, and Mebust

3           The ALJ is responsible for determining credibility and resolving ambiguities and

4  conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5
6  Where the medical evidence in the record is not conclusive, "questions of credibility and

7  resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

8  642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

9  Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

10  whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

11  all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

12  within this responsibility." Id. at 603.

13          In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

14  "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

15
16  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

17  stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

18  "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

19  draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

20  F.2d 747, 755, (9th Cir. 1989).

21

22
   _____

23  [1] As the Ninth Circuit has further explained:

24          . . . It is immaterial that the evidence in a case would permit a different conclusion than that
           which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
           substantial evidence, the courts are required to accept them.  It is the function of the
25         [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
           not try the case de novo, neither may it abdicate its traditional function of review.  It must
26         scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
           rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.      Dr. Ruddell

Plaintiff challenges the ALJ's following findings concerning the opinion of Dr. Ruddell:

. . . [T]he undersigned gives significant weight to [the opinion of] Dr. Ruddell who performed a [state agency] psychological evaluation on the claimant in September 2009. Dr. Ruddell found that the claimant is able to reason concretely and deal with abstract concepts (7F/5). The claimant is able to

REPORT AND RECOMMENDATION - 5

> understand, remember and learn.  The claimant has the ability to concentrate, persist and pace (7F/5).  Finally, she would have difficulty adapting to new situations and coping with change (7F/5).  The undersigned gives significant weigh [sic] to [the opinion of] Dr. Ruddell because she was able to examine the claimant before determining her work restrictions.  In addition, her opinion is consistent with the objective evidence and treatment records regarding the claimant's mental impairments.

AR 20-21.  Specifically, plaintiff argues that despite the fact that the ALJ stated she was giving Dr. Ruddell's opinion significant weight, she failed to adopt all of the functional limitations Dr. Ruddell found.  The undersigned agrees the ALJ so erred.

In her decision, the ALJ found plaintiff was capable of performing simple and some complex tasks, and could work in positions that require superficial in-person contact with the general public. See AR 17.  Dr. Ruddell, however, also found plaintiff to be markedly limited in her ability to exercise judgment and make decisions, and moderately limited in her ability to learn new tasks, relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, care for herself, and maintain appropriate behavior in a work setting. See AR 344.  Dr. Ruddell further opined that plaintiff's "[a]bility to adapt to new situations and emotionally cope with change appears to be an area of dysfunction and is severe enough to adversely affect [her] ability to function." Id.  The ALJ's above assessment of plaintiff's mental functional capabilities does not adequately account for these additional limitations.

Defendant points to section DI 24510.065(B)(1)(c) of the Commissioner's Program Operations Manual System ("POMS")[2] to argue the ALJ did not err here, because that section directs medical consultants who complete "Section III of [form] SSA-4734-F4-SUP - Functional Capacity Assessment," to "**[i]nclude no severity ratings** or **nonspecific** qualifying **terms** (e.g.,

---

[2] As noted by defendant, while the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

REPORT AND RECOMMENDATION - 6

moderate, moderately severe) to describe limitations" when completing the narrative statement

regarding ability to function, because "[s]uch terms do not describe function and do not usefully

convey the extent of capacity limitation." See https://secure.ssa.gov/poms.nsf/links/0424510065

(emphasis in original).  But Dr. Ruddell did not complete form SSA-4734-F4-SUP, and it is not

at all clear the above POMS section was intended to apply to other, state agency forms.  Even if

defendant is correct, furthermore, the ALJ still failed to take account of the limitation regarding

adaptability and ability to cope Dr. Ruddell included in the narrative statement she provided in

addition to the moderate to marked limitations she assessed.

       B.    <u>Dr. Breen</u>

       Plaintiff also challenges the ALJ's following findings regarding the opinion of Dr. Breen:

> Dr. Breen performed a [state agency] psychological evaluation on the
> claimant in January 2011.  She found that the claimant would "need
> encouragement to pursue work but is likely capable if she can find a
> position["] (21F/6).  The undersigned gives some weight to Dr. Breen's
> opinion because she had the opportunity to examine the claimant before
> opining on her ability to work.  However, the undersigned declines to give her
> opinion significant weight because she fails to address the specific mental
> restrictions that make the claimant "likely capable" of working.

AR 21.  The undersigned agrees that here too the ALJ erred.  Dr. Breen made a number of fairly

specific statements concerning plaintiff's mental restrictions.  For example, she stated plaintiff

"will have trouble with motivation and task completion," "may have difficulty working with

others because she is easily frustrated and irritated with others," "is fearful of most everything

and this . . . effects how she interacts with others," and "will have trouble paying attention to

details." AR 567.  Dr. Breen also assessed plaintiff with moderate limitations in a number of

additional functional areas, including in performing routine tasks without supervision, being

aware of normal hazards, taking appropriate precautions, communicating and performing

effectively in a work setting with limited public contact, and maintaining appropriate behavior

REPORT AND RECOMMENDATION - 7

1   (see AR 569), which as discussed above are not fully consistent with those the ALJ adopted.

2       Defendant argues any error on the part of the ALJ is harmless[3] here, because Dr. Breen

3   opined that plaintiff could probably work assuming she remained in treatment and could find a

4   job.  But the ALJ did not give this as a basis for discounting Dr. Breen's opinion.  See Pinto v.

5   Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on

6   a ground that the agency did not invoke in making its decision"); see also Connett v. Barnhart,

7   340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not

8   discuss).  Dr. Breen's opinion concerning plaintiff's ability to work, furthermore, is far more

9   equivocal than defendant makes it out to be.  For example, Dr. Breen stated that plaintiff would

10  need "assistance" and "encouragement to pursue work" in order to be able to do so as she "will

11  not be able to do this on her own." AR 569.  Further, Dr. Breen opined that plaintiff's medication

12  "should" make it easier to work, not that it would definitely do so. Id.

13      C.      Dr. Langhofer

14      Plaintiff further finds fault with the ALJ's treatment of Dr. Langhofer's opinion, which

15  the ALJ addressed as follows:

16

17

18          Dr. Langhofer also performed a [state agency] psychological evaluation on the
            claimant in January 2010.  She found that the claimant "seems stable at
19          present" and that "she is likely capable of doing clerical type work" (8F/6).
            The undersigned gives Dr. Langhofer's opinion some weight because she had
20          the opportunity to examine the claimant.  However, Dr. Langhofer also fails to
            adequately define the claimant's specific mental restrictions and how they
21          would affect her ability to perform work.  Therefore, the undersigned only
            gives Dr. Langhofer's opinion some weight (10F/3).
22

23  AR 21.  Again the undersigned agrees the ALJ erred here.  As did Breen, Dr. Langhofer pointed

24  to fairly specific mental restrictions, such as plaintiff "[w]ould have problems getting along with

25

26  _____
    [3] An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 8

1   people and possible altercations verbally," and "[w]ould likely have problems relating to people

2   and situations appropriately." AR 351.  Dr. Langhofer also noted moderate limitations in many

3   of the same functional areas that both Dr. Ruddell and Dr. Breen did, which once more the ALJ

4   did not fully encompass in her own assessment of plaintiff's ability to function. See AR 353.  In

5   addition, the undersigned finds no merit in defendant's reliance on Dr. Langhofer's statement

6   that "[i]f she were stable in treatment she is likely capable of doing clerical type work" (AR 353)

7   to argue harmless error here, as it is not at all clear the ALJ would have adopted that statement if

8   she had properly considered the specific mental restrictions Dr. Langhofer found.

9

10          D.      Dr. Mebust

11          The record contains a treatment note from early September 2011, in which Dr. Mebust

12   found "evidence of severe obstructive sleep apnea," which she went on to state "may result in

13   daytime sleepiness." AR 812.  As noted by plaintiff, the ALJ mentioned this opinion, but did not

14   adopt any limitations stemming from her sleep apnea, finding it had no "more than a minimal

15   impact on [her] ability to work." AR 14-15.  This plaintiff asserts was error.  The undersigned

16   agrees the ALJ did not sufficiently explain why Dr. Mebust's opinion would have no more than a

17   minimal impact on plaintiff's ability to work.  While it is true Dr. Mebust did not opine that

18   plaintiff's sleep apnea definitely would cause daytime sleepiness, clearly she felt such would be

19   a distinct possibility.  Given the significant probative nature of this opinion evidence, the ALJ

20   should have given a more detailed explanation for rejecting it, and her failure to do so was error.

21   See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (ALJ "must do more than offer his

22   conclusions" regarding opinion evidence, but rather "must set forth his own interpretations and

23   explain why they, rather than the doctors', are correct").

24

25

26

REPORT AND RECOMMENDATION - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

II.      The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains lay observations from state agency social worker, Lyna Hixenbaugh, which read as follows:

> 54 year old woman who arrives a few minutes late to each appointment; grooming and dress OK. It took 3 appointments to complete the application process because it got to be "too much for her". Movement and thought processes slowed. Would often just close her eyes for several seconds while formulating an answer, if she remembered at all. At one point, said "Ya know, my depression has been worse lately." She stated she would like to reschedule again to complete the process. She was originally sent forms to complete that would make the process quicker and easier. She got so overwhelmed looking at them, that she only got a couple of names written down with no other information, then had to stop. Even so, she was as cooperative with the process as able. She said at the close of the second apt that "I just want to get better and go back to work."

AR 215. The ALJ did not mention this evidence in her decision, which plaintiff argues is error. The undersigned agrees. Defendant asserts the above observations do not constitute significant probative evidence – and thus the ALJ was not required to consider them – because they "did not contain any observations that bore on Plaintiff's ability to work." ECF #17, p. 16. The observed inability to complete the application process, though, clearly does call into question the ability to

REPORT AND RECOMMENDATION - 10

complete tasks generally, including in the workplace, as do the observed slowed movement and thought processes.

Defendant goes on to assert that even if the ALJ can be said to have erred here, that error was harmless because Ms. Hixenbaugh simply "summarizes plaintiff's subjective statements, such as her statements that her depression has been worse lately and the process of filling out the forms was 'too much for her.'" Id.; see also Valentine v. Commissioner Social Security Administration, 574 F.3d 685 (9th Cir. 2009) (where ALJ rejects lay witness testimony that is similar to claimant's subjective complaints for same clear and convincing reasons given to reject those complaints, those reasons are also germane to lay witness). The ALJ in this case, however, did not offer any reason for rejecting the lay witness evidence in the record. Indeed, she did not even address it. As such, the ALJ erred. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (lay testimony concerning claimant's ability to work is competent evidence and cannot be disregarded without comment).

As for defendant's harmless error argument, where "it is 'obvious from the record . . . that the error made no difference'" to the ALJ's ultimate disability determination, that error will be deemed harmless. Molina v. Astrue, 674 F.3d 1104, 1118 (9th Cir. 2012) (quoting Shinseki v. Sanders, 556 U.S. 396, 407 (2009)). Further, [w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." Id. at 1116-17. Accordingly, if an ALJ "provided well-supported grounds for rejecting testimony regarding specified limitations," the district court cannot then "ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not

REPORT AND RECOMMENDATION - 11

1   expressly discredit each witness who described the same limitations." Id. at 1121.

2         The problem for defendant, though, is that Ms. Hixenbaugh's observations do not merely

3   summarize plaintiff's own subjective complaints.  For example, while plaintiff in general claims

4   problems with attention, memory, concentration, and task completion (see AR 117, 198), as

5   noted above Ms. Hixenbaugh's observations are more specific and go much further, describing

6   slowed movements and thought processes, and plaintiff's apparent need to close her eyes for

7   several seconds in order to formulate an answer and to stop the application process due to being

8   so overwhelmed (see AR 215).  The undersigned thus declines to find harmless error here, as it

9   cannot be said that it is obvious from the record that the error in failing to consider the lay

10  witness evidence made no difference in the ALJ's ultimate disability determination.

11

12  III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

13        Defendant employs a five-step "sequential evaluation process" to determine whether a

14  claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found

15  disabled or not disabled at any particular step thereof, the disability determination is made at that

16  step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be

17  made on the basis of medical factors alone at step three of that process," the ALJ must identify

18  the claimant's "functional limitations and restrictions" and assess his or her "remaining

19  capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184

20  *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to

21  determine whether he or she can do his or her past relevant work, and at step five to determine

22  whether he or she can do other work. See id.

23

24        Residual functional capacity thus is what the claimant "can still do despite his or her

25  limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all

26

REPORT AND RECOMMENDATION - 12

of the relevant evidence in the record.  <u>See id</u>.  However, an inability to work must result from the

claimant's "physical or mental impairment(s)."  <u>Id.</u>  Thus, the ALJ must consider only those

limitations and restrictions "attributable to medically determinable impairments."  <u>Id.</u>  In

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent

with the medical or other evidence."  <u>Id.</u> at *7.

       The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform  less than the full range of light work . . . in that [the]
> claimant can perform positions that require her to stand for 4 hours a
> day intermittently and sit for up to 4 hours a day intermittently.  She can
> occasionally climb ramps and stairs.  She can perform positions that
> require frequent balancing, kneeling, crawling, crouching and stooping.
> She can perform simple as well as some complex tasks.  She can perform
> positions that require superficial in-person general public contact.**

AR 17 (emphasis in original).  Because as discussed above the ALJ erred in evaluating the

opinions of Dr. Ruddell, Dr. Breen, Dr. Langhofer, and Dr. Mebust, and in evaluating the lay

witness evidence in the record, it cannot be said that the ALJ's assessment of plaintiff's residual

functional capacity is supported by substantial evidence at this time.

IV.    <u>The ALJ's Step Four Determination</u>

       At step four in the sequential disability evaluation process, the ALJ found plaintiff could

perform her past relevant work, because that work did not require the performance of work-

related activities precluded by the residual functional capacity the ALJ assessed.  <u>See</u> AR 21.

The claimant has the burden at step four of the disability evaluation process to show that he or

she is unable to return to his or her past relevant work.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99

(9th Cir. 1999).  As discussed above, the ALJ erred in assessing plaintiff with the RFC that she

did, given the ALJ's errors in evaluating the medical and lay witness evidence in the record.  As

REPORT AND RECOMMENDATION - 13

such, the ALJ's step four determination also cannot be upheld at this time, as it is far from clear that it is supported by substantial evidence as well.

V.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because as discussed above issues still remain in regard to the medical and lay witness evidence in the record concerning plaintiff' mental functional capabilities – and therefore in regard to her residual functional capacity and ability to perform her past relevant work – remand for further consideration of these issues is warranted.

Plaintiff argues this matter should be remanded for an award of benefits.  However, she has failed to establish that the ALJ was required to adopt all of the limitations found by the

REPORT AND RECOMMENDATION - 14

medical opinion sources discussed herein or the observations noted by the lay witness evidence in the record, and therefore that she clearly is incapable of performing her past relevant work at this time.  Nor has there been any determination by the ALJ as to whether plaintiff is able to perform other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process.[4]  Accordingly, the undersigned declines to find an award of benefits is appropriate here.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 21, 2014**, as noted in the caption.

DATED this 6th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

---

[4] If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).

REPORT AND RECOMMENDATION - 15